IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:03cv411

| | |
|---|---|
| ROBERT D. ADAMS & <br> AILEEN S. ADAMS <br><br> Plaintiffs, <br> v. <br><br> VILLAGE OF WESLEY CHAPEL, <br> a North Carolina Municipal Corporation <br> & ALBERT W. BLACK, individually <br><br> Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the motions for summary judgment of Defendant Village of Wesley Chapel ("Village") (Case No. 3:03cv411: Doc. No. 68) and Defendant Albert W. Black ("Black") (Case No. 3:03cv411: Doc. No. 63), and related briefs, responses, replies, and appendices. This case was originally filed in parallel actions: Case 3:03cv411 in federal court, and 03cvs01474 in state court. On September 22, 2003, the defendants removed 03cvs01474 from state court pursuant to 28 U.S.C. § 1441.[1] The cases were consolidated and have proceeded under 3:03cv411.[2] (Case No. 3:03cv460: Doc. No. 23.) The plaintiffs filed a second amended complaint on which the Court relies to identify the claims. (Doc. No. 96). For the reasons stated below, the Court **GRANTS** the defendants' motions for summary judgment on Claims Two, Three, Four, Five, Six, Seven, and Eight and **REMANDS** Claims Ten, Eleven, and Twelve.[3]

---

[1] 03cvs01474 was given the federal case number of 3:03cv460.

[2] From here on, all Docket Numbers will refer to the lead case, 3:03cv411, unless otherwise provided.

[3] The Adamses' motion to dismiss Claims One and Nine was previously granted by this Court. (Doc. No. 90).

## I. INTRODUCTION

In July 1999, Albert Black, the Mayor of the Village of Wesley Chapel, spoke with Robert Adams regarding the voluntary annexation of his and his wife's 184-acre Property ("Property") in Union County. Black followed up with a Letter ("Letter") and an enclosed petition for voluntary annexation. In September 1999, the Village Council approved the plaintiffs' petition. In August 2000, the Village adopted a zoning ordinance. In May 2001, a developer stated an interest in purchasing the Property but was unwilling to pay the asking price because the zoning ordinance limited the number of lots into which the Property could be subdivided. The plaintiffs unsuccessfully petitioned the Village to re-zone or de-annex the Property. An expert for the plaintiffs determined that the value of the Property was $1.5 million less under the new zoning ordinance.

Three years later, the plaintiffs filed suit in state and federal court against the Village and Black, individually. As said above, the state action was removed to federal court and consolidated with the original federal action. The plaintiffs sold the Property while this action was pending, rendering moot its claims for declaratory judgment and recision of the annexation. These claims were dismissed on the plaintiffs' motion. Remaining are their claims for damages resulting from an unconstitutional taking, due process and equal protection violations, 42 U.S.C. § 1983 violations, negligent misrepresentation, fraud, and unfair trade practices.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court determines that there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In making that determination, the Court must be certain the record does not reveal any factual disputes, resolving all ambiguities and drawing all permissible factual inferences in a

light most favorable to the party against whom summary judgment is sought. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).

### III. DISCUSSION

#### A. Statute of Limitations

The defendants assert this action is time-barred because it was not filed within three years of the conversation regarding voluntary annexation (July 19, 1999) or the date the Property was annexed (September 13, 1999). (Doc. No. 64: Black Mem. at 37; Doc. No. 69: Village Mem. at 37). The plaintiffs contend that the relevant date is when the Village enacted the zoning ordinance (August 21, 2000). (Doc. No. 72: Plaintiffs Mem. at 72).

The federal and state constitutional claims which are made actionable through 42 U.S.C. § 1983 and brought in North Carolina are subject to a three-year statute of limitations. National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1161-62 (4th Cir. 1991). In National Advertising, the Fourth Circuit found that a claim relating to a zoning ordinance accrued at the time of its enactment, Id. at 1163-64, because the effect of the ordinance was then certain, not contingent, and involved significant interference with the primary use of the property. Id. at 1163 n.3.

Here, the plaintiffs claim that Black's alleged misrepresentation in July 1999 resulted in harm on August 21, 2000 when the Village enacted the zoning ordinance. (Doc. No. 96: Second Am. Compl. at ¶¶ 47, 74.) Until the ordinance took effect, the plaintiffs did not suffer any significant interference with the use of their Property. Thus, the limitations period began to run when the Village's ordinance was enacted. Because the plaintiffs filed this action on August 21, 2003, within three years of August, 21, 2000, it was timely filed.

B.  Mootness of Constitutional Claims

The defendants assert that the plaintiffs lack standing, in part, because there is no actual controversy remaining after the sale of the Property. (Doc. No. 69: Village Mem. at 19-23.) The North Carolina Supreme Court has held that "whenever during the course of litigation it develops that . . . the questions originally in controversy between the parties are no longer at issue, the cause should be dismissed. . . ." Messer v. Town of Chapel Hill, 485 S.E.2d 269, 270 (N.C. 1997) (internal citations omitted) (holding the sale of the property in question mooted the controversy). The court also found that "[a] mere diminution in value from the re-zoning, even a severe one, is not compensable." Id. Because the plaintiffs sold the Property on March 1, 2004, at the purchase price of $3,700,000, the constitutional claims are moot and non-compensatory, even if there was a severe diminution in value. Id. Even if the Court reaches the merits, there exists no constitutional violation.

C.  Taking Claims

The plaintiffs assert that the Village violated their rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 19 of the North Carolina Constitution when it enacted the zoning ordinance because such ordinance caused a substantial decrease in the value of their Property. (Doc. No. 96: Second Am. Compl. at ¶¶ 24-26). The defendants argue that the annexation and zoning ordinance were not "takings" because the plaintiffs have not lost all economically beneficial use of the land. (Doc. No. 64: Black Mem. at 36-37; Doc. No. 69: Village Mem. at 40).

The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation. Lingle v. Chevron U.S.A., Inc., 54 U.S. 528, 125 S.Ct. 2074 (2005). Per se takings occur when the government physically invades private property and when regulations deprive an owner of all economically

beneficial use of a property. Id. at 2081. The standard under the North Carolina Constitution is the same. A-S-P Assoc. v. City of Raleigh, 258 S.E.2d 444 (N.C. 1979). To determine whether a taking has occurred, courts consider the following: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with distinct investment-backed expectations; and (3) the character of the governmental action. Lingle, 54 U.S. at 538-39.

Here, the economic impact was a decrease in the value of the Property by $1,590,000, or 33%. This is well beneath amounts of loss which the United States Supreme Court and the Fourth Circuit have held do not constitute takings. Penn Central, 438 U.S. 104, 131, 98 S.Ct. 2646 (citing Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143 (1915) (loss of 87.5%) and Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114 (1926) (loss of 75%)); Front Royal and Warran County Industrial Park Corp. v. Town of Front Royal, 135 F.3d 275 (1998) (loss of 50%).

In considering the extent to which the regulation interferes with distinct investment-backed expectations, the Court in Penn Central found that a "reasonable return" was still available to the landowner where historic landmark regulations allowed the property to continue to operate as it had for 65 years. 438 U.S. at 136. In the instant case, the plaintiffs purchased their Property in 1964 for $56,500 and sold it for $3,700,000. They were certainly able to realize a "reasonable return" on their investment.

Finally, the Court must consider the character of the governmental action. The Supreme Court has long recognized the legitimacy of local governments seeking to protect against overcrowding and preserving the character of their areas. Village of Euclid, Ohio v. Amber Realty Co., 272 U.S. 365, 388, 47 S. Ct. 114 (1926); City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 732, 115 S. Ct. 1776 (1995). Here, the Village enacted a land use restriction with the stated purpose "to provide for residential development at low densities consistent with suitability of the land and

the rural character of the Village." (Doc. No. 73: Plaintiffs Ex. A). The character of the governmental action was within the well-established exercise of local government power.

Each of the factors articulated in Lingle weigh against the plaintiffs' claim. The evidence, in a light most favorable to the plaintiffs, fails to establish that the enactment of the Village's zoning constituted a taking under the federal or state constitutions. Therefore, summary judgment in favor of the Village must be granted on the plaintiffs' Second and Third Claims.

D. Substantive Due Process Claims

The plaintiffs claim that Black and the Village deprived them of their "right to be let alone" through Black's allegedly fraudulent inducement and the Village's subsequent annexation of the Property. (Doc. No. 96: Second Am. Compl. at ¶¶ 26-27). To establish a substantive due process violation under the United States and North Carolina Constitutions, a plaintiff bears the burden to establish: (1) possession of a property interest; (2) state action that deprives the property interest; and (3) the state's action is "so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." Front Royal, 135 F.3d at 288 (emphasis in original); A-S-P Assoc., 258 S.E.2d at 213.

Here, the plaintiffs have failed to prove that they possessed a property interest. Although a protected property interest must be grounded in state law, Gardner v. City of Baltimore, 969 F.2d 63, 68 (4th Cir. 1992), the plaintiffs draw their "right to be let alone" from Justice Brandies' dissent in Olmstead v. United States, 277 U.S. 438, 478 (1928). Far from establishing a protected property interest in a particular zoning classification or annexation status, that case addressed government wiretapping under the Fourth Amendment.[4] To the contrary, the Supreme Court has recognized that a reasonable property owner must expect that the use of his property will be restricted by the state's

---

[4] Olmstead was later overturned in Katz v. United States, 389 U.S. 347, 354, 88 S. Ct. 507 (1976).

legitimate use of its police power. Naegele Outdoor Advertising, 803 F. Supp. at 1079 (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S. Ct. 2886 (1992)).

The creation of zoning ordinances is also a discretionary power that defeats a claim of a property interest in a particular zoning classification. Slyvia, 48 F.3d at 826; accord Gardner, 969 F.2d at 68. Because the plaintiffs fail to establish a property interest in their zoning classification or annexation status, it is irrelevant for purposes of constitutional law whether Black or the Village acted improperly. Gardner, 969 F.2d at 71. Therefore, summary judgment is granted on the plaintiffs' Fourth and Fifth Claims.

E. Equal Protection Claims

The plaintiffs have alleged that their equal protection rights were violated through the Village's annexation and subsequent enactment of the zoning ordinance without a rational basis. (Doc. No. 96: Second Am. Compl. at ¶¶ 27-28). The Fourth Circuit and the Supreme Court "have made clear that when no fundamental right or suspect classification is at issue, the Equal Protection Clause allows a legislative body wide latitude in drawing classifications. Social or economic legislation 'will be sustained if the classification drawn . . . is rationally related to a legitimate state interest.' " Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 438 (4th Cir. 2002) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440, 105 S.Ct. 3249 (1985); see also Bacon v. Lee, 549 S.E.2d 840, 856 n.11 (N.C. 2001) (providing that North Carolina applies the same equal protection analysis as is used for the federal constitutional right). The plaintiffs do not allege an infringement of a fundamental right or assert a suspect classification.

When there is no explicit favoring of one class or person over another on the face of the statute or administrative action in question, "the plaintiff bears the initial burden of proving that a classification was nonetheless intentionally utilized." Sylvia, 48 F.3d at 819. The discriminatory

7

classification must be "clear and intentional." Id. (citing Snowden v. Hughes, 321 U.S. 1,8, 64 S. Ct. 397 (1944) (internal citations omitted)). Discriminatory intent implies a particular course of action "at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Id. (citing Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282 (1979) (internal citations omitted)). Here, the plaintiffs fail to show that the defendants intended to classify them differently in any way. They make numerous assertions that they were treated differently from other property owners: (1) the telephone conversation between Black and Mr. Adams and the Letter sent to Mr. Adams were unique occurrences; (2) the annexation of the plaintiffs' Property was the first time the Village failed to advertise the event in the newspaper as purportedly required by North Carolina law; and (3) their request for a zoning permit to subdivide lots below the 40,000 square feet requirement was the only request denied. None of these facts, however, demonstrate an intent to treat them differently. The mere existence of unique circumstances or occurrences does not, in itself, prove intent to treat the plaintiffs differently "because of" the "adverse effects." Id.

The plaintiffs have also failed to show that the Village lacked a rational basis for its actions. As the Fourth Circuit has said, "the relevant question under rational basis review is whether local officials 'reasonably could have believed that [their] action was rationally related to a legitimate governmental interest.'" Tri-Country, 281 F.3d at 439 (citing Front Royal, 135 F.3d at 290). Furthermore, "[t]he actual motivations for the [official's] actions are irrelevant." Id. (citing United States R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179, 101 S. Ct. 453 (1980)).

Here, the defendants have successfully shown that their actions of annexing, zoning of the Property, and even the denial of the plaintiffs' request to re-zone the Property were rationally related to the legitimate government interest of protecting against overcrowding and a desire to preserve

8

the character of the area. See Village of Euclid, 272 U.S. at 388; City of Edmonds, 514 U.S. at 732. Here, the Village enacted a land use restriction with the stated purpose "to provide for residential development at low densities consistent with suitability of the land and the rural character of the Village." (Doc. No. 73: Plaintiffs Ex. A). Furthermore, no convincing evidence of malign motivation has been proffered, but even if it had been, the stated legislative purpose satisfies the rational basis standard. See Tri-Country, 281 F.3d at 439. Therefore, summary judgment in favor of the defendants must be granted as to the plaintiffs' Sixth and Seventh Claims.

F.  42 U.S.C. § 1983 Claim

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must prove: "(1) that they were deprived of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977 (1999). As detailed above, the plaintiffs have not proven a constitutional or other federal deprivation of rights. Accordingly, they can not establish a § 1983 claim and summary judgment as to the plaintiffs' Eighth Claim is granted.

G.  Remand of Claims Ten, Eleven, and Twelve

As detailed above, this case was originally filed in parallel actions in state and federal court. This Court has original jurisdiction over the federal claims (Claims Two, Four, Six, and Eight) pursuant to 28 U.S.C. § 1331. The Court has the discretion to exercise pendent jurisdiction over the state claims (Claims Three, Five, Seven, Ten, Eleven, and Twelve) pursuant to 28 U.S.C. § 1367(a). The Court may decline to exercise pendent jurisdiction over state claims when the claims are complex issues of state law, the claims predominate the other claims over which the Court has original jurisdiction, the Court has dismissed all claims over which it has original jurisdiction, or when the Court finds other exceptional circumstances that compel it to decline jurisdiction. 28

U.S.C. § 1367(c). Even if the Court initially exercises jurisdiction, the Court may return the case to the state court when the federal claims are resolved. "[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614 (1988).

When choosing not to exercise pendent jurisdiction, the Court should also carefully consider the ramifications for dismissing or remanding the pendent state claims. For example,

> a remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case. In such a case, a dismissal will foreclose the plaintiff from litigating his claims. This consequence may work injustice to the plaintiff: although he has brought his suit in timely manner, he is time barred from pressing his case.

Id. at 351-52.

The Court grants the defendants' motions for summary judgment on federal Claims Two, Four, Six, and Eight. The Court also grants summary judgment on state Claims Three, Five, and Seven because they require the identical analysis as federal Claims Two, Four, and Six. The Court, however, declines supplemental jurisdiction over the remaining state Claims Ten (Negligent Misrepresentation), Eleven (Fraud) and Twelve (Unfair and Deceptive Trade Practices), and remands them to the Superior Court of Union County for the following reasons.

First, these state claims raise complex issues of state law. Regarding negligent misrepresentation, there is a dearth of case law on the subject of a mayor's duty to communicate accurately information about annexation laws. Regarding fraud, the issue of intent to deceive is also a complex matter of state law, particularly when considering a mayor acting in furtherance of the

10

municipality that he represents. And regarding unfair and deceptive trade practices, the issue of deception and what constitutes "trade practices" are sensitive state-law matters. Second, the above mentioned issues clearly predominate all other state and federal claims presented before the Court, and, or course, predominate as the sole claims upon dismissal of the claims over which the Court has original jurisdiction. And third, the Court has in fact dismissed all claims over which it has original jurisdiction.[5]

The Court also concludes that a remand is preferable to dismissal because the statute of limitations on the state claims has expired.[6] Id. It would be unfairly prejudicial to the plaintiff to dismiss the claims, especially if they were time-barred from refiling this action in state court. Therefore, the Court finds it most appropriate to remand the Claims to state court.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED THAT:**

1. the motions for summary judgment of Defendant Village of Wesley Chapel (Doc. No. 68) and Defendant Albert W. Black (Doc. No. 63) for Claims Two, Three, Four, Five, Six, Seven, and Eight are **GRANTED**;

2. regarding Claims Two, Three, Four, Five, Six, Seven, and Eight, there being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk shall enter Final Judgment forthwith and without further notice;

---

[5] Ketema v. Midwest Stamping Inc., No. 05-1866, slip op. (4th Cir. May 12, 2006), is distinguishable. There, the Fourth Circuit found abuse of discretion in the district court's denial of supplemental (or pendent) jurisdiction where the statute of limitations had run. Here, the Court remands rather than dismisses, which protects the plaintiffs' ability to pursue their claims in the proper forum.

[6] This Court has found that the three year statute of limitations accrued on August 21, 2000, and that the plaintiffs timely filed their original suit in state and federal courts on August 21, 2003. (See supra III. A). Today, however, the statute has long since expired.

3. Claims Ten (Negligent Misrepresentation), Eleven (Fraud) and Twelve (Unfair and Deceptive Trade Practices), are **REMANDED** to the North Carolina General Court of Justice for the State of North Carolina, Union County, Superior Court Division as Case Number 03cvs01474;

4. the **REMAND** is **STAYED** for 30 days, pending any notice of appeal. If appeal of final judgment is taken regarding Claims Two, Three, Four, Five, Six, Seven, and Eight, the **STAY** shall be extended pending resolution by the Fourth Circuit;

5. the Clerk of Court shall provide a certified copy of this Order to counsel for the plaintiffs. Counsel for the plaintiffs is directed to file the certified copy with the Clerk of Court for Union County upon expiration of the **STAY**; and

6. the Clerk of Court shall provide the Clerk of Court for Union County with a certified copy of the Second Amended Complaint (Case 3:03cv411: Doc. No. 96) and docket sheets for 3:03cv460 and 3:03cv411, upon expiration of the **STAY**.

Signed: September 18, 2006

Robert J. Conrad, Jr.
Chief United States District Judge